UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RANDALL KRUSE,                                          CIVIL NO. 05-154 (RHK/JSM)

    Plaintiff,

v.                                               <u>REPORT AND RECOMMENDATION</u>

JOHNSON CRUSHING INCORPORATED,

    Defendant.

The above matter is before the undersigned on Defendant=s Motion to Dismiss [Docket No. 2].

John Fabian, III appeared on behalf of plaintiff. Harvey Eckart appeared on behalf of defendant.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). Based upon the pleadings, arguments by counsel, and for the reasons discussed below, it is recommended that defendants' Motion to Dismiss [Docket No. 2] be **DENIED**.

**I.**     **<u>FACTUAL BACKGROUND</u>**

Plaintiff Randall Kruse ("Kruse") brought this action seeking overtime pay from his former employer, defendant Johnson Crushing, Inc. ("JCI"), for hours worked in excess of the maximum hours permitted by the Fair Labor Standards Act ("FSLA") and Minnesota Fair Labor Standards Act, ("MFLSA"). In addition, pursuant to the Minnesota Whistleblower Statute, Kruse is seeking damages arising from his termination of employment in retaliation for his complaints about not being paid overtime, and for his refusal to move a fifty-three foot

van trailer that contained a five-hundred gallon fuel tank, in violation of the law.

Kruse alleges the following in his Complaint:

In or about May 2003, Kruse began working for JCI, a Minnesota corporation. Compl. ¶¶ 4, 5. Kruse's job duties included operating heavy machinery related to the production of crushed rock used in road beds in Minnesota and Wisconsin. Compl. ¶ 6. Almost immediately, Kruse began working in excess of forty hours per week. Compl. ¶ 7. After receiving his first paycheck, Kruse noticed that he had not been paid for the overtime he had worked. Compl. ¶ 8. Kruse complained to JCI's owner, Jeff Johnson ("Johnson"), about not being paid overtime, but Johnson told him that he could only afford to pay Kruse for forty hours per week. Compl. ¶ 8. In August 2003, Kruse again asked Johnson for his overtime pay, but Johnson told him that JCI could not pay him overtime. Compl. ¶ 9. In March 2004, Kruse again asked Johnson for his overtime pay, but this time Johnson told Kruse to "get away" and that he did not want to talk about the issue. Compl. ¶ 10. In June 2004, Johnson Aggregates, LLC ("JAL")[1] began issuing Kruse's pay checks and for the first time, Kruse's pay checks included overtime pay at one-and-one-half times his regular rate of $20.62 per hour. Compl. ¶ 11.

During Kruse's employment with JCI, he worked as many as ninety-six hours per week and regularly worked between seventy and ninety hours per week. Compl. ¶ 14. JCI failed to pay Kruse overtime for the hours he worked in excess of forty hours per week. Compl. ¶ 14.

While Kruse was working at JCI, the work site equipment included a fifty-three foot van

---

[1] JAL is a Wisconsin corporation engaged in the same or similar business as JCL. JAL is owned by Johnson and uses the same equipment and personnel as JCI. Compl. ¶ 11.

trailer that contained a five-hundred gallon fuel tank. Compl. ¶ 12. Kruse learned that in order to operate that piece of machinery, the Department of Transportation regulations required that he have a hazardous materials endorsement on his driver's license, which Kruse did not have. Compl. ¶ 12. In July 2004, Kruse's co-worker, Mike Brau ("Brau"), ordered Kruse to move the van trailer with the fuel tank. Kruse told Brau that he was not going to move the trailer because he did not have the requisite endorsement and he was not going to violate the law. Compl. ¶ 13. After placing a phone call to Johnson, Brau told Kruse that he was "done" and to "pack your stuff" because Kruse had refused to move the van trailer. Compl. ¶ 13. Kruse then left the work site. Compl. ¶ 13.

On January 1, 2005, Kruse filed this lawsuit, asserting the following causes of action: (1) violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; (2) violation of the Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.25 and 177.33; and (3) violation of the Minnesota Whistleblower Statute, Minn. Stat. § 181.932. With respect to his overtime claims, Kruse alleged that JCI violated the FLSA and MNFSLA because it failed to compensate him at a rate of one-and-one-half times his regular rate of wages for the time he worked in excess of the forty-hour and forty-eight hour maximums set by each Act, respectively. Compl., Counts II, II. With respect to his whistleblower claims, Kruse alleged that he informed JCI that he would not operate the van trailer because he did not have a hazardous materials permit as required by federal regulations, and that he had an objective basis in fact for believing that operating the machinery without the endorsement would be a violation of state or federal law. Compl. ¶¶ 32, 33. In addition, Kruse alleged that he complained about not being paid overtime compensation and that he had a good faith belief that JCI's failure to

3

pay such compensation was a violation of state or federal law. Compl. ¶¶ 34, 35. As a result of Kruse's refusal to operate the van trailer and his complaints about the overtime compensation, Kruse alleged that JCI retaliated against him by terminating his employment. Compl. ¶ 36.

On February 22, 2005, JCI filed a motion seeking dismissal of all counts on grounds that they failed to state claims upon which relief can be granted.

In opposition to these motions, Kruse maintained that the motion to dismiss should be denied. Kruse argued that his Complaint meets the standard under the Federal Rules of Civil Procedure for "notice pleading" and that his Complaint adequately sets forth claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.25 and 177.33, and the Minnesota Whistleblower Statute, Minn. Stat. § 181.932.

## II.  **STANDARD OF REVIEW**

"Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001). In reviewing a motion to dismiss, the Court must accept as true all factual allegations contained in the complaint and afford the plaintiff all reasonable inferences to be drawn from those facts. Meyer v. City of Joplin, 281 F.3d 759, 760-61 (8th Cir. 2002) (citing Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001)). Dismissal is appropriate only if it appears beyond doubt that the plaintiff cannot prove any set of facts in support of the claim which would entitle him to relief. See Turner v. Holbrook, 278 F.3d 754, 757 (8th Cir. 2002) (citing Sisley v.

Leyendecker, 260 F.3d 849, 850 (8th Cir.2001)). "[D]ismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Gebhardt v. ConAgra Foods, Inc., 335 F.3d 824, 829 (8th Cir. 2003) (citations omitted).

### III. DISCUSSION

#### A. Federal Fair Labor Standards Act and Minnesota Fair Labor Standards Act—Motor Carrier Exemption

Kruse asserted a cause of action for violation of the FLSA, 29 U.S.C. § 201 et seq., and a cause of action for violation of the MFLSA, Minn. Stat. §§ 177.25 and 177.23, because JCI allegedly failed to pay him overtime for hours he worked in excess of the maximum hours permitted by each Act. In this regard, both Acts require an employer to pay their employees time-and-a-half for hours worked in excess of the stated maximum hours, unless the employee is exempt from the overtime payment. See 29 U.S.C. § 207(a)(1); Minn. Stat. § 177.25.[2] Whether an employee is exempt from overtime compensation is dictated by 29 U.S.C. § 213 and Minn. Stat. § 177.23.

JCI asserted that the FLSA, 29 U.S.C. § 213(b)(1), and the MFLSA, Minn. Stat. § 177.23 subd. 7(16), exempt from regulation those employment situations where the Secretary of Transportation may regulate employment qualifications and maximum hours of service to promote the safety of operation of equipment, if the employee in the performance of his duties moves goods or acts in furtherance of a commercial enterprise in interstate commerce. See

---

[2] The FLSA requires employers to pay overtime to employees who work in excess of 40 hours per week. 29 U.S.C § 207(a)(2)(A). The MFLSA requires employers to pay overtime to employees who work in excess of 48 hours in any work week. Minn. Stat. § 177.25, Subd. 1.

Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem.") at 2. JCI claimed that Kruse's Complaint alleged at paragraphs 6, 11, 12 16, 17, and 32 that JCI was engaged in interstate commerce and that Kruse was subject to the qualifications established by the Federal Department of Transportation. Based on this interpretation of the Complaint, JCI argued that Kruse's overtime claims should be dismissed with prejudice because the allegations in the Complaint establish as a matter of law that Kruse was exempt from the overtime compensation requirements of the FLSA and the MFLSA. Def.'s Mem. at 3.

In response, Kruse argued that the allegations in the Complaint do not support JCI's contention that the motor carrier exemption applies to his situation, thus negating the basis for the motion to dismiss his FLSA and MFLSA claims. Accepting that the FLSA's maximum hour requirements do not apply to an employee over "whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [also known as section 204 of the Motor Carriers Act of 1935 ("MCA")]", and that the "MCA authorizes the Secretary of Transportation to proscribe requirements for qualifications and maximum hours of 'motor carriers' and 'private motor carriers'"[3], Kruse argued that to determine if the motor carrier exemption exists, the applicable

---

[3] 49 U.S.C. § 13102 defines motor carrier and private motor carrier as follows:

(12) Motor carrier—The term "motor carrier" means a person providing motor vehicle transportation for compensation.

(13) Motor private carrier.--The term "motor private carrier" means a person, other than a motor carrier, transporting property by motor vehicle when--

    (A) the transportation is as provided in section 13501 of this title;

    (B) the person is the owner, lessee, or bailee of the property being transported;

regulations require a determination "'both on the class to which [the] employer belongs and on the class of work involved in the employee's job.'" See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Mem.") at 4-5 (citing to 29 C.F.R. § 782.2). Kruse asserted that because his Complaint does not allege that JCI is a "motor carrier" or a "motor private carrier" under 49 U.S.C. § 13102, or that Kruse's job duties exempted him from the FLSA, the motion to dismiss must fail. Pl.'s Mem. at 5.

JCI countered Kruse's response by contending that his allegations that he was fired for his refusal to move a fifty-three foot van trailer with a fuel tank, based on his good faith belief that Department of Transportation regulations required an endorsement on his driver's license to drive such a vehicle, established that his employment was outside the coverage of both the FLSA and the MFLSA. In other words, JCI's argument goes like this: (1) by alleging that Department of Transportation regulations required that he have a hazardous materials endorsement on his drivers license, Kruse was alleging that the endorsement was a qualification; (2) by alleging that the endorsement was a qualification set by the Department of Transportation, Kruse was alleging that the Department of Transportation has the power to establish his employment qualifications; and (3) by alleging that the Department of Transportation has the power to establish his employment qualifications, then pursuant to 29 U.S.C. § 213(b)(1), Kruse is foreclosed as a matter of law from asserting any entitlement to relief under the FLSA and the MFLSA. See Defendant's Reply Memorandum of Law in

---

and

(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

7

Support of Motion to Dismiss ("Def.'s Reply Mem.") at 2-3.

In order to determine whether Kruse's claim for overtime compensation must be dismissed, one must first travel through the maze of statutes and regulations that speak to the issue and then analyze those statutes and regulations in light of the facts alleged in Kruse's Complaint.

The starting place is 29 U.S.C. § 213(b)(1) which provides:

The provisions of section 207 of this title shall not apply with respect to—

(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.[4]

49 U.S.C. §31502, entitled "Requirements for qualifications, hours of service, safety, and equipment standards", states that it applies to transportation described in section 13501 of this title. See 49 U.S.C. §31502(a)(1). Section 13501 confers jurisdiction on the Secretary of Transportation and the Surface Transportation Board "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier," within interstate commerce. See 49 U.S.C. §13501(1). 49 U.S.C. § 31502 goes on to state that the Secretary of Transportation is authorized to prescribe requirements for:

---

[4]   Similarly, pursuant to Minn. Stat. § 177.23 subd. 7(16), the following employees are excluded from the overtime requirements of MFLSA:

> any individual in a position for which the United States Department of Transportation has power to establish qualifications and maximum hours of service under United States Code, title 49, section 31502.

Thus, in order to determine whether an employee is exempt from the requirements of overtime compensation under Minnesota law, this Court looks to the federal statutes and

> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
>
> (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

49 U.S.C. § 31502(b)(1-2).

In order to determine whether an employee is exempt from the maximum hours provisions of the FLSA and is instead governed by the qualifications and maximum hours of service prescribed by the Secretary of Transportation, one looks to the applicable regulation, 29 C.F.R. § 782.2, which states:

> The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the <u>class to which his employer belongs</u> and on the <u>class of work involved in the employee's job</u>. The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who (1) <u>are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act, and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce</u> within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a) (citations omitted) (emphasis added).  The regulation also establishes that the exemption is applicable to only those employees:

> whose work involves engagement in activities consisting wholly or in part of a class of work which is defined (i) as that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(b)(2).

To determine whether an employee falls within the ambit of 29 CFR § 782.2(b)(2), the

---

regulations governing employment situations regulated by the Secretary of Transportation.

9

Court must determine whether "the bona fide duties of the job performed by the employee are in fact such that he is . . . called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this section." 29 CFR § 782.2(b)(3). This subsection further states:

> This general rule assumes that the activities involved in the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce. Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation." On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties.

29 CFR § 782.2(b)(3).

> Finally, 29 CFR § 782.2 provides:
>
> Similarly, the exemption does not apply to an employee whose job does not involve engagement in any activities which have been defined as those of drivers, drivers' helpers, loaders, or mechanics, and as directly affecting the "safety of operation" of motor vehicles . . . Thus the activities of drivers, drivers' helpers, loaders, or mechanics in connection with transportation which is not in interstate of foreign commerce within the meaning of the Motor Carrier Act provide no basis for exemption under section 13(b)(1) of the Fair Labor Standards Act.

29 C.F.R. § 782.2(d) (citations omitted).

Accepting as true all factual allegations contained in the Complaint and affording Kruse all reasonable inferences to be drawn from those facts, this Court cannot conclude as a matter of law that Kruse is exempt from the FLSA and the MFLSA based on the motor carrier exemption. While Kruse alleged that he believed the van trailer he refused to move was

subject to the Department of Transportation regulations and that these regulations required a hazardous materials endorsement on his license to operate the vehicle, (see Compl. ¶¶ 12, 32), there are no facts alleged in the Complaint that allow the Court to determine that JCI was a "motor carrier" or a "motor private carrier" under 49 U.S.C. § 13102, that JCI was a motor carrier engaged in interstate commerce as required by 49 U.S.C. § 31502(a)(1), or that Kruse's regular job duties exempted him from the FLSA. In fact, not only are there are no allegations in the Complaint that JCI was a motor carrier or motor private carrier, but as to Kruse himself, all that is known at this time is that he operated heavy machinery related to the production of crushed rock that was used in road beds in Minnesota and Wisconsin, and that he was told on one occasion to drive a fifty-three foot van trailer. Compl. ¶¶ 6, 13.

In summary, based on the facts alleged in the Complaint, the Court has no basis for finding that (1) JCI was a motor carrier; (2) that it was a motor carrier involved in interstate commerce; (3) that Kruse was a driver, driver's helper, loader, or mechanic; or (4) that he engaged in such activities in the ordinary course of his work on a regular basis, or even "from time to time." See 29 CFR § 782.2(b)(3). An allegation that a vehicle Kruse was ordered to operate is subject to federal transportation regulations, is not sufficient to invoke the motor carrier exemption at this time.[5] Therefore, the Court recommends that JCI's Motion to Dismiss, on the grounds that Kruse's Complaint establishes as a matter of law that he is exempt from

---

[5] Even if JCI was correct that Kruse had alleged that his employment was subject to the qualifications established by the Federal Department of Transportation, that reading of the Complaint does not lead to the conclusion that he was exempt from any requirement to pay overtime. The issue is not whether he is subject to federal transportation regulations; the issue at the end of the day is whether JCI is a private motor carrier that transports people or property between states, and whether Kruse was a driver, driver's helper, loader, or mechanic in the ordinary course of his work or that he performed this work on a regular basis or from time to

the FLSA and the MFLSA, be denied.

### B. Federal Fair Labor Standards Act and Minnesota Fair Labor Standards Act—Complaint Meets Pleading Requirements

As an alternative ground for its motion for dismissal, JCI asserted that the Complaint does not allege a legally sufficient claim and does not allege the requisite facts to establish every element of a claim for overtime compensation under the FSLA and MNFSLA. In particular, JCI argued that to state a claim under 29 U.S.C § 207, Kruse must plead facts to establish an employee-employer relationship, engagement in activities within coverage of the Act, and that JCI violated the wage requirements and a definite amount of compensation due. See Def.'s Mem. at 4 (citing Retail Store Emp. U. Loc. 400 v. Drug Fair-Community Drug Co., 307 F. Supp. 473, 477 (D. D.C. 1969)). JCI further argued that overtime must be worked with the knowledge of the employer. In this regard, JCI argued that Kruse did not allege any of the following: that JCI ever authorized or permitted him to work overtime; what Kruse did when he worked overtime; that JCI operated between seventy and ninety hours per week; that JCI had actual or constructive knowledge that Kruse actually worked the alleged overtime; or any information regarding his work schedule to determine the hours of overtime worked or what amount in overtime is due. See Def.'s Mem. at 4-9.

In response, Kruse argued that the Federal Rules of Civil Procedure require only that he provide "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the judgment for the relief the pleader seeks." Pl.'s Mem. at 6 (citing Fed. R. Civ. P. Rule 8(a)(2) and (3)). Kruse also argued that JCI's reliance on Retail Store is misplaced because that case addresses the sufficiency of evidence presented at trial and

---

time. There is nothing in the Complaint that addresses these factors.

does not apply to a Rule 12(b)(6) motion to dismiss.  Finally, Kruse argued that he has set forth sufficient facts in the Complaint to give JCI fair notice of his claims and the relief he seeks.  In this regard, Kruse asserted that he alleged in his Complaint: (1) the existence of an employment relationship with JCI; (2) that he worked overtime in excess of forty hours per week; (3) that he notified JCI of its failure to pay him overtime; (4) that JCI refused to pay the overtime; and (5) that Kruse is entitled to be paid for his overtime hours.  Kruse also asserted that he provided JCI with a range of hours he worked during his employment.  Based on these allegations, Kruse argued that he has provided sufficient information to place JCI on notice of the nature and basis for this action.  See Pl.'s Mem. at 7.

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has stated that,

> the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting Conley and stating that Rule 8(a) is a simplified notice standard that merely requires the defendant be given notice of the plaintiff's claims and its basis); Smith v. St. Bernards Reg'l Med. Ctr., 19 F.3d 1254, 1255 (8th Cir.1994) (citing Conley and finding Rule 8(a) "requires only a 'short and plaint statement of the claim' that gives fair notice of the plaintiff's claim and grounds for relief.").  This notice pleading standard is possible because of the presence of discovery and

other pretrial procedures that are designed "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." Conley, 355 U.S. at 47-48, 78 S.Ct. 99; see also Swierkiewicz, 534 U.S. at 512, 122 S.Ct. 992.

Based on the allegations in the Complaint, the Court finds that Kruse has given fair notice to JCI of the FLSA and MFLSA claims and has stated the facts on which those claims are based. Taking the facts as alleged and the reasonable inferences that can be drawn from these facts, Kruse has alleged the existence of an employment relationship with JCI, that he worked overtime in excess of forty hours per week, that he notified JCI of its failure to pay him overtime, that JCI refused to pay the overtime, and that Kruse is entitled to be paid for his overtime hours. To the extent that JCI may not know all the facts that it needs to defend this case, it will have the opportunity to engage in discovery to flesh out the facts.

Having received fair notice of Kruse's claims and the grounds upon which they rest, JCI's motion to dismiss should be denied.

### C. Minnesota Whistleblower Statute

Kruse has alleged violations of the Minnesota Whistleblower Statute, Minn. Stat. § 181.932(1)(a) and (c). These provisions state as follows:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (a) the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;
>
> * * *
>
> (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the

employer that the order is being refused for that reason.

Minn. Stat. § 181.932(1)(a), (c).

To resolve claims under the Whistleblower Act, Minnesota courts apply the McDonnell Douglas burden-shifting analysis. See Nichols v. Metro. Ctr. for Indep. Living, 50 F.3d 514, 516 (8th Cir. 1995) (citations omitted). To assert a claim under the Whistleblower Act, Kruse must establish a prima facie case; the employer must then present a legitimate reason for its action; and the factfinder must decide whether the employer's reasons are pretextual. See Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1119 (8th Cir.1997). In order to establish a prima facie case where an alleged retaliatory discharge is involved, an employee must establish: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." See Nichols, 50 F. 3d at 516 (citing Hubbard v. United Press Int'l., Inc., 330 N.W.2d 428, 444 (Minn. 1983)).

Kruse alleged in his Complaint that he refused his co-worker's request to move a van trailer because he did not have a hazardous materials permit, he believed that moving the truck without a permit was against the law, and that after he refused to move the van trailer, JCI informed him that his employment was terminated. Compl. ¶¶ 12, 13, 32, 33, 36. Kruse also alleged in his Complaint that he complained several times to JCI about not being paid overtime, that he had a good faith belief that JCI's failure to pay overtime compensation was in violation of state and federal law, and that as a result of Kruse's complaints, JCI retaliated against him and terminated his employment. Compl. ¶¶ 8-10, 34-36.

JCI argued that Kruse did not cite a specific statute, law, or regulation for the proposition that moving a trailer with a five-hundred gallon fuel tank requires a hazardous

materials endorsement, did not allege where Kruse learned this information or how the proposition in the complaint could be considered an objective basis in fact, and did not allege that the tank had any fuel in it to implicate that he was asked to transport hazardous materials. See Def.'s Mem. at 10-11.

In response, Kruse argued that Rule 8 of the Federal Rules of Civil Procedure does not require that Kruse allege these additional facts, and that JCI had failed to provide any authority to the contrary.

In its reply, JCI asserted that Kruse did not allege any facts to indicate there was illegal activity in which he refused to participate, did not allege that he was ordered to violate the law, did not allege that JCI intended to violate the law, and did not allege that anything he was ordered to do would violate the law. See Def.s' Reply Mem. at 8-9. In this regard, JCI argued that Kruse's Complaint is insufficient because it does not allege any illegality in being ordered to move the trailer to make a prima facie case of retaliation. Id. at 9. JCI further argued that the Whistleblower Act does not protect employees from personnel decisions, but only from decisions that are unlawfully motivated by the employee's refusal to violate the law. In this regard, JCI asserted that assuming Kruse was fired for refusing to move the trailer because he did not have the requisite endorsement on his driver's license, JCI exercised a legitimate right as an employer to terminate an employee for refusing to perform a task that he was unqualified to perform. Id. Finally, JCI argued that proof of intentional retaliation is required, but Kruse did not allege how he could have objectively believed in good faith that JCI intended or even would have allowed the violation Kruse alleged would have occurred from ordering him to move the trailer. Id. at 10.

The Court finds that Kruse has stated a cause of action under Minn. Stat. § 181.932(1)(c) with respect to his refusal to operate the fifty-three foot van trailer. As noted above, Rule 8(a) is a simplified notice standard that merely requires the defendant be given notice of the plaintiff's claims and the basis for these claims. Here, Kruse alleged in his Complaint that he refused his co-worker's request to move a van trailer because he did not have a hazardous materials permit, he believed that moving the truck without a permit was against the law, and that after he refused to move the van trailer, JCI informed him that his employment was terminated. The Complaint adequately sets forth allegations that put JCI on notice that a claim is being pursued under the Whistleblower Act.

As to the alleged overtime violation, JCI argued that even if JCI violated the law by not paying overtime, Kruse did not allege that he reported the violation to anyone as required by Minn. Stat. § 181.932(1)(a) of the Whistleblower Act. Rather, Kruse only alleged that he complained that he was not being paid overtime, and that complaining to one's employer does not constitute a "good faith report of violation or suspected violation" under the statute. See Def.s' Reply at 10. Lastly, JCI argued that Kruse continued to work for approximately one year even though he believed he was entitled to overtime pay, but never reported the suspected overtime violation nor refused to participate in the alleged illegal activity. Id. at 10-11.

Section 181.932(1)(a) of the Whistleblower Act "protects an employee who reports a good faith violation of any federal or state law, including violations of wage and hour laws." See Nelson v. Ellerbe Becket Const. Services, 283 F.Supp.2d 1068, 1082 (D. Minn. 2003) (citing Anderson-Johanningmeier v. Mid-Minnesota Women's Center, Inc., 637 N.W.2d 270, 274 (Minn. 2002)). This is because the Minnesota Supreme Court has specifically held that "the

17

protections of section 181.932, subd. 1(a), are not limited to reports that implicate public policy." Anderson-Johanningmeier, 637 N.W.2d at 277; see also Abraham v. County of Hennepin, 639 N.W.2d 342, 354 (Minn. 2002) (rejecting argument that Whistleblower Statute has no application where appellants' claims reflected only their self-interest and did not implicate public policy). "However, it is not enough to simply determine whether an employee made reports of suspected violations of law; the Court must also answer the critical question of whether these reports were made in good faith." Nelson, 283 F.Supp.2d at 1082 (citing Obst v. Microtron, Inc., 614 N.W.2d 196, 202 (Minn. 2000)). In Obst, the Minnesota Supreme Court stated: "In order to determine whether a report of a violation or suspected violation of law is made in good faith, we must look not only at the content of the report, but also at the reporter's purpose in making the report. The central question is whether the reports were made for the purpose of blowing the whistle, i.e., to expose an illegality." 614 N.W. 2d at 202.

The Court finds that Kruse has stated a cause of action under Minn. Stat. § 181.932(1)(a) with respect to his claim that JCI failed to pay him overtime compensation. Kruse alleged in his Complaint that he complained several times to JCI about not being paid overtime, that he had a good faith belief that JCI's failure to pay overtime compensation was in violation of state and federal law, and that as a result of Kruse's complaints, JCI terminated his employment. Further, given the posture of case, where the Court must accept as true the factual allegations of the Complaint and all reasonable inferences to be drawn from these facts, the Court cannot conclude aw, that Kruse cannot prove any set of facts in support of his claim that his communications to Johnson regarding JCI's failure to pay Kruse overtime, amounted to a good faith report of a violation of law. See Nelson, 283 F.Supp.2d at 1082

(holding that the record before the court on summary judgment, when construed in the light most favorable to plaintiff, supported a finding that reports about failure to pay overtime were made in good faith when they were made to the employer). Therefore, the Court recommends that JCI's motion to dismiss Kruse's Whistleblower claims be denied.

### RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein IT IS RECOMMENDED that defendants' Motion to Dismiss [Docket No. 2] be **DENIED**.

Dated:	August 31, 2005

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **September 14, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **September 14, 2005**.